IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

WISCONSIN CARRY, INC.,
BRAD CHAPIEWSKY, BENJAMIN MOYES,
LARRY HERZOG and WILLIAM J. VEERHUSEN,

                                          OPINION AND ORDER

                Plaintiffs,

                                        10-cv-548-bbc

       v.

CITY OF MADISON, WISCONSIN,
and NOBLE WRAY, in his official
capacity as Chief of Police of the
City of Madison, Wisconsin,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        Plaintiffs Brad Chapiewsky, Benjamin Moyes, Larry Herzog and William Veerhusen

are gun owners who live in or near Madison, Wisconsin.  Each belongs to plaintiff Wisconsin

Carry, Inc., which is an organization devoted to "promoting the free exercise of the right to

keep and bear arms for its members and securing those rights through education and

litigation."  Am. Cpt. ¶ 1, dkt. #15.  In their amended complaint, plaintiffs say that they

"would like to carry a firearm in Madison where it is legal to do so," but they are afraid that

it will lead to their "detention, search, arrest and prosecution" because of "customs, policies

1

and practices" of defendants City of Madison and Chief of Police Noble Wray.  Id. at ¶¶ 23-26.  Plaintiffs contend that defendants' policies violate their rights under the federal and state constitutions, in particular their right to keep and bear arms.  They ask for declaratory and injunctive relief, prohibiting defendants from enforcing the policies.

Defendants have filed a motion to dismiss the complaint on the ground that plaintiffs lack standing to sue and their claims are not ripe for review.  In the alternative, defendants ask the court to abstain from providing declaratory relief.  They argue that plaintiffs do not have standing because they have never been subjected to the policy identified in the complaint and it is speculative to believe that they will be subjected to it in the future.  In addition, they say that the claims are not ripe because it is too uncertain how any policy is likely to be applied  and plaintiffs have failed to identify a concrete hardship that would be caused by a denial of judicial review.

I am granting defendants' motion.  With respect to plaintiffs' claims that defendants' policies will lead to plaintiffs' unlawful arrest or prosecution, the policy plaintiffs cite does not require or instruct police officers to arrest all those who carry a firearm and plaintiffs do not allege that they intend to violate any statutes that would require an arrest.  Accordingly, I conclude that it is speculative to argue that plaintiffs will be arrested and charged if they carry a firearm.

The chances of some form of police interaction are higher because the policy seems

2

to require officers to investigate all reports of a person carrying a firearm in public, but  I cannot determine from plaintiffs' amended complaint whether their challenges to these contacts are justiciable.  Plaintiffs do not specify whether they would carry a firearm if they (1) could invalidate some or all the aspects of the policy that involve unwanted police contacts, but (2) could not obtain a pre-enforcement ruling regarding the validity of a potential arrest.  Without this information, I cannot determine whether success on their claims would alleviate their alleged injury (refraining from carrying a firearm), which is one of the requirements for standing.  Accordingly, I am giving plaintiffs an opportunity to amend their complaint to clarify their intentions.

OPINION

The first task of the court is to identify the policy or policies that are at issue. Although defendants use the phrase "customs, policies and practices" in their amended complaint, they rely entirely on excerpts from one September 2010 press release defendant Wray issued after five men were charged with disorderly conduct for carrying handguns in holsters at a Culver's restaurant on the east side of Madison.  (None of the plaintiffs were involved in that incident.)  Defendants have provided a larger excerpt of that press release for context.  Generally, a court may not consider documents outside the pleadings in resolving a motion to dismiss, Venture Associates Corp. v. Zenith Data Systems Corp., 987

3

F.2d 429, 431 (7th Cir. 1993), but I may consider the rest of the press release because it is a "documen[t] to which the Complaint . . . refer[s]" (plaintiffs quote the press release throughout the complaint); it is "concededly authentic" (plaintiffs do not dispute the authenticity of defendants' document and in fact plaintiffs point to a website that reprints the press release in full); and it is "central to the plaintiffs' claim" (it is the only policy identified in the amended complaint).  Hecker v. Deere & Co., 556 F.3d 575, 582-83 (7th Cir. 2009).  Accordingly, the relevant portion of the press release is set forth below:

> Chief Wray wants to make clear: It is the department's wish that concerned citizens call 911 when they see armed subjects.
>
> Following Saturday's incident, he sent an internal memo to all officers:
>
> MPD officers regularly are dispatched to reports of individuals who are armed with firearms. When responding to these incidents, officers should:
>
> • Approach the suspect using the proper tactical response. The individual should be contacted, controlled, and frisked for weapons if appropriate. Officers should separate the suspect from any weapons in his/her possession during the encounter.
>
> • Officers should conduct a thorough investigation to determine whether any violations of state statute or city ordinance have occurred. Some of the relevant offenses to consider include:
>
> • Carrying a Concealed Weapon (&#167;941.23)
> • Disorderly Conduct (&#167;947.01)
> • Carrying a Firearm in Public Building (&#167;941.235)
> • Carrying Handgun Where Alcohol Beverages May be Sold and Consumed (&#167;941.237)
> • Being a Felon in Possession of a Firearm (&#167;941.29)
> • Safe Use and Transportation of Firearms (&#167;167.31)

- Possession of Short-Barreled Shotgun or Short-Barreled Rifle (&#167;941.28)
- Gun-free School Zones (&#167;948.605)
- Possession of a Dangerous Weapon by a Person Under 18 (&#167;948.60)
- Endangering Safety by Use of Dangerous Weapon (&#167;941.20)

- Officers should verify that the firearm is not stolen, and attempt to verify that the person possessing the firearm is not legally barred from doing so (as a felon, due to an injunction, etc.). However, someone who has been detained is not legally obligated to provide identification to officers if no criminal ordinance violations have occurred. A person who refuses to provide identification should not be arrested for obstructing; however, if probable cause for another offense exists the suspect should be arrested for that offense and can then be identified during the citation or booking process.

- When responding to incidents involving subjects openly carrying firearms in public places, officers should investigate to determine whether the suspects actions caused or were likely to cause a disturbance. The primary factors to be considered include the location, time of day and witness/bystander perceptions. Remember that the disorderly conduct statute does not require that an actual disturbance take place, only that the conduct in question be of a type that tends to cause or provoke a disturbance.

- It is my expectation that MPD officers encountering individuals who are armed with firearms in public places will take a pro-enforcement approach. If the investigation shows probable cause for a violation, the suspect should be arrested or cited.

In their brief, plaintiffs identify a second policy of defendants "to charge individuals who openly carry in the City of Madison with disorderly conduct every single time they openly carry." Plts.' Br., dkt. #21, at 7-8. In support, plaintiffs cite the declaration of plaintiff Bejamin Moyes, who avers that an unnamed Madison police officer made this statement to him in "late spring/early summer" 2008. Dkt. #22. (Plaintiffs do not rely in

5

their brief or amended complaint on the Culver's incident to support the existence of a policy, so I do not consider that issue.)  It is questionable whether a three-year-old hearsay statement from a single, unidentified officer would be enough to establish a current municipal policy, particularly when the alleged policy is inconsistent with defendant Wray's more recent press release, in which he instructs officers to consider individual circumstances in assessing a possible instance of disorderly conduct.  However, I need not resolve that issue because the alleged policy in Moyes's affidavit is not part of the amended complaint.  In fact, the amended complaint says nothing about a policy, practice or custom of charging gun carriers with disorderly conduct.  Accordingly, I am disregarding plaintiffs' argument on this matter.

With respect to defendant Wray's press release, defendants refer to it in their briefs as an "alleged policy," but they do not argue that it is unreasonable to infer at this stage of the proceedings that the press release represents the official policy of the city.  As the chief of police, defendant Wray likely has "final policymaking authority" with respect to matters of law enforcement in Madison, e.g., Eversole v. Steele, 59 F.3d 710, 716 n.7 (7th Cir. 1995), which means that his actions may be treated in some circumstances as municipal policy for the purpose of cases brought under 42 U.S.C. § 1983 such as this one.  Campion, Barrow & Associates, Inc. v. City of Springfield, Illinois, 559 F.3d 765, 769 (7th Cir. 2009) ("One way that municipal custom, policy, or practice can be shown is by demonstrating a

6

'deliberate choice to follow a course of action . . . from among various alternatives by the official or officials responsible for establishing final policy, with respect to the subject matter in question.'") (quoting <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469 (1986)).  Further, although the press release is not identified on its face as a "policy," it includes instructions directed at all Madison police officers regarding the proper course of action when confronted with a person carrying a firearm.

Thus, the question presented by defendants' motion is not whether plaintiffs have identified a municipal policy, but whether that policy is sufficient to give plaintiffs standing to sue and creates a ripe dispute between the parties that is fit for judicial review.  Standing and ripeness are "two closely related concepts" that are part of the limitation on federal court jurisdiction in Article III of the U.S. Constitution to "cases or controversies."  <u>Rock Energy Co-op. v. Village of Rockton</u>, 614 F.3d 745, 748 (7th Cir. 2010).  A plaintiff has standing when he suffers a "concrete" injury that is fairly traceable to the defendant's actions and capable of being addressed by a favorable decision from the court.  <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61(1992).  "[R]ipeness determinations depend on 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.' " <u>Metropolitan Milwaukee Association of Commerce v. Milwaukee County</u>, 325 F.3d 879, 882 (7th Cir. 2003) (quoting <u>Abbott Labs. v. Gardner</u>, 387 U.S. 136, 149 (1967)).  Both doctrines "bar a plaintiff from asserting an injury that 'depend[s] on so many

future events that a judicial opinion would be advice about remote contingencies.'" <u>Rock</u>
<u>Energy</u>, 614 F.3d at 748 (quoting <u>Meridian Security Insurance Co. v. Sadowski</u>, 441 F.3d
536, 538 (7th Cir. 2006)).

Plaintiffs argue that defendants' policy treats all gun carriers as "suspects" and is likely
to expose them to unwanted police contact, such as being questioned, searched, detained or
even arrested and prosecuted in addition to having their gun seized, at least temporarily.
(Plaintiff Wisconsin Carry contends that it has standing through its members, so I need not
consider the organization separately.  <u>Friends of the Earth, Inc. v. Laidlaw Environmental</u>
<u>Services (TOC), Inc.</u>, 528 U.S. 167, 181 (2000) (organization has standing to sue when at
least one of its members has standing on matter related to purpose of organization)).
Defendants argue that there are too many ways in which the police can carry out the policy
in the press release to conclude that the policy's implementation will result in any concrete
harm to plaintiffs.  In particular, they say that "[w]hether and where the plaintiffs may go
openly armed is not known; whether any citizen will report to police a plaintiff's
openly-armed presence, as a result of any municipal policy, is speculative; and whether any
of the plaintiffs will actually encounter police while openly-armed also is speculative, as is
the police response during any encounter."  Dfts.' Br., dkt. #19, at 15.

Defendants have not enforced the policy as to plaintiffs, but that is not necessarily
a bar to judicial review.  "[W]e do not require a plaintiff to expose himself to liability before

8

bringing suit." <u>MedImmune, Inc. v. Genentech, Inc.</u>, 549 U.S. 118, 128-29 (2007).  Rather, the question is whether a "credible threat" exists that the government will take the challenged action against the plaintiff.  <u>Holder v. Humanitarian Law Project</u>, 130 S. Ct. 2705, 2717 (2010).  <u>See also</u> <u>Babbitt v. United Farm Workers National Union</u>,  442 U.S. 289, 298-99 (1979) ("When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.") (internal quotations omitted).

Defendants point out that plaintiffs do not allege that they have engaged in any conduct covered by the policy.  Rather, plaintiffs allege that the policy is having a "chilling" effect on their exercise of their right to bear arms.  Defendants argue at length that a "chilling" effect on a plaintiff's conduct is not sufficient to give standing outside the First Amendment context, but the only case they cite for this proposition is <u>White v. United States</u>, 601 F.3d 545, 554 (6th Cir. 2010), in which the court stated that "[o]ur jurisprudence assumes that only the chilling of First Amendment rights may confer standing."  The court did not cite any authority for this statement and resolved the case on other grounds.

Defendants' argument is dubious.  It is true that many of the cases in which courts

9

find standing because of a "chilling" effect involve claims under the First Amendment.  E.g., Indiana Right to Life, Inc. v. Shepard, 507 F.3d 545, 549 (7th Cir. 2007); Commodity Trend Service, Inc. v. Commodity Futures Trading Commission, 233 F.3d 981, 985-86 (7th Cir. 2000). However, I am not aware of any cases in which the Court of Appeals for the Seventh Circuit or the Supreme Court has adopted defendants' view.  Rather, both courts have used general language when concluding that a party may have standing to sue if he is faced with the choice of giving something up by complying with the law or being sanctioned for refusing to following it.  E.g., 520 Michigan Ave. Associates, Ltd. v. Devine, 433 F.3d 961, 962-63 (7th Cir. 2006) ("Courts frequently engage in pre-enforcement review based on the potential cost that compliance (or bearing a penalty) creates."); Hays v. City of Urbana, Illinois, 104 F.3d 102, 103 (7th Cir. 1997) ("Long ago, the Supreme Court held that a person who must comply with a law or face sanctions has standing to challenge its application to him, even if the threat of prosecution is not immediate—indeed, even if the law is not yet in effect.").

     Further, the courts have held in a number of cases outside the First Amendment context that a plaintiff may establish standing to sue with evidence that she is choosing not to engage in particular behavior in order to avoid being harmed by the defendant.  For example, in Friends of the Earth, 528 U.S. at 182-83, the Court concluded that the plaintiffs had standing to challenge a company's discharge of pollutants into a particular river because

10

they alleged that they wished to use the river for recreational purposes, but they did not do so because they were afraid they would be harmed by the pollution caused by the defendant. See also Books v. City of Elkhart, Indiana, 235 F.3d 292, 299 (7th Cir. 2000) (plaintiff has standing if he "has altered his behavior to avoid" being harmed). Under Friends of the Earth, 528 U.S. at 184, the question is not whether the plaintiffs are asserting a particular right, but simply whether they are avoiding particular behavior out of a "reasonable fear" of harm.

Applying this standard, I agree with defendants that plaintiffs' claims are not justiciable to the extent they seek to declare as unlawful a potential arrest or prosecution. The policy at issue does not require or instruct officers to arrest all individuals who are carrying firearms; rather, it tells them to assess the facts of each case and perform an arrest only when there is probable cause of a particular crime.  I agree with plaintiffs that the policy encourages officers to look for violations, but it does not encourage officers to make up facts or otherwise make an arrest unless the elements of the crime are present.  Because none of the plaintiffs allege that they have any intent to violate any of the laws listed in the policy, any claim by plaintiffs that they will be arrested or prosecuted for carrying a firearm is speculative.

Even if I agreed with plaintiffs that they have standing to challenge the policy because the chances of arrest are "greater than zero," Brandt v. Village of Winnetka, Illinois,  612 F.3d 647, 650 (7th Cir. 2010), I would conclude nevertheless that the claim is not ripe for

11

review because it is "contingent [on] future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United States, 523 U.S. 296, 300 (1998). The court of appeals has held that an as-applied challenge to a law is not ripe when it is not yet known under what circumstances that law will be enforced. Brandt, 612 F.3d at 650 ("[I]t is hard to see how a court can evaluate an as-applied challenge sensibly until a law is applied, or application is soon to occur and the way in which it works can be determined.").

This does not mean necessarily that the amended complaint must be dismissed entirely. Plaintiffs are challenging not just possible arrest and prosecution, but any unwanted police contact, such as being questioned and having their firearm seized during the police encounter. With respect to some of this conduct, the policy does not seem to make police action contingent on the particular circumstances. For example, the policy states that "[o]fficers should separate the suspect from any weapons in his/her possession during the encounter." No exceptions are identified. Although the policy does not expressly authorize detention of the individual, it is reasonable to infer that his freedom of movement will be restricted during the encounter. In addition, the policy encourages "concerned citizens" to "call 911 when they see armed subjects" and instructs officers to investigate each person with a firearm for possible violations. Because these provisions seem to apply in all circumstances, their validity may be determined without further factual development. 520 Michigan Ave., 433 F.3d at 963 ("[T]he case was ripe because the regulation's validity could be assessed

without knowing the precise means and expense of compliance.").

It may be that the other police contacts would not result in a constitutional violation, but that issue is outside the scope of defendants' motion.  Further, defendants do not argue that these unwelcome contacts are too insignificant to qualify as "concrete" injuries that would give plaintiffs standing to sue.  Compare Sierra Club v. Franklin County Power of Illinois, LLC, 546 F.3d 918, 925-26 (7th Cir. 2008) ("The defendants claim that [plaintiff's] injury is insubstantial, but the injury-in-fact necessary for standing need not be large, an identifiable trifle will suffice.") (internal quotations omitted); Board of Education of Ottawa Township High School District, 140 v. Spellings, 517 F.3d 922, 925 (7th Cir. 2008) ("[T]he constitutional requirement of standing differs from a minimum-amount-in-controversy requirement. Any identifiable injury will do. . . . We have allowed important interests to be vindicated by plaintiffs with no more at stake in the outcome of an action than a fraction of a vote, a $5 fine and costs, and a $1.50 poll tax."). Instead, defendants say it is speculative to suggest that plaintiffs will ever have those contacts.  However, because the policy encourages citizens to call the police any time they see someone with a firearm and the policy seems to require officers to have the contacts whenever they receive notification, there is at least a "reasonable probability" of a police interaction in the event any of the plaintiffs would choose to carry a firearm openly.  MainStreet Organization of Realtors v. Calumet City, Illinois, 505 F.3d 742, 745 (7th Cir. 2007).

13

This situation is much different from <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 102 (1983), a case on which defendants rely.  In <u>Lyons</u>, the Court held that a plaintiff lacked standing to seek an injunction against the enforcement of a police chokehold policy because he did not face a realistic threat of being subjected to a chokehold.  In particular, the Court was unwilling to assume that "that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part." <u>Id.</u> at 105-06.  This is a much less plausible scenario than the one alleged by plaintiffs in this case.  In <u>Lyons</u>, the chances of another police interaction were speculative because the plaintiffs did not allege that they intended to violate any laws.  Even if they had, the use of a chokehold could not be predicted with any certainty because it was not required in every arrest.  It would depend on a number of circumstances, including the level of resistance of the suspect.  These variables are not present in this case.

As in <u>Lyons</u>, the case defendants cite from the Sixth Circuit involved a string of contingencies.  In <u>Warshak v. United States</u>, 532 F.3d 521, 532-33 (6th Cir. 2008), the court concluded that a challenge to the constitutionality of a statute that authorized searches of emails under certain circumstances was not ripe because it "turn[ed] on a long list of speculative assumptions—that (1) the government will again seek to obtain his e-mail contents, even though he has already been indicted and convicted, (2) it will choose to do

14

so through § 2703(d), as opposed to a search warrant or subpoena, (3) a court will determine that the § 2703(d) requirements are met, (4) the government will seek to invoke the delayed-notice provision and (5) a court will find that notice of the search would imperil the existence of an already-known investigation." Id. at 532-33. Again, the chain of inferences in this case is not nearly as long.

One roadblock remains that could prevent this case from moving forward. Plaintiffs allege in their amended complaint that they "would like" to carry a firearm, but they are afraid to do so because of a number of potential unwanted police contacts, including "arrest" and "prosecution." This statement has two potential problems. First, the Supreme Court has held that plaintiffs must have a "firm intention" or "concrete plans" of engaging in the conduct at issue. A general statement that the plaintiffs the "would like" to carry a firearm openly may be insufficient because it leaves ambiguity regarding plaintiffs' intentions if they succeed in this lawsuit, particularly because none of the plaintiffs suggest that they carried a gun openly before the 2010 press release or continue to do so outside Madison. Summers v. Earth Island Institute, 129 S. Ct. 1142, 1150-51 (2009) (plaintiff's statement that he "want[s] to" go to a location that will be adversely affected by defendant's conduct "is insufficient to satisfy the requirement of imminent injury"); Lujan, 504 U.S. at 564 ("Such 'some day' intentions—without any description of concrete plans, or indeed any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury

15

that our cases require.").

Second, because I am concluding that plaintiffs' challenges to any future arrest or prosecution are not justiciable, this raises the question whether plaintiffs would carry a firearm if they could invalidate some or all of the other unwanted police contacts (such as temporary deprivation of their firearm), but they could not obtain a pre-enforcement ruling on arrest or prosecution.  If the answer is that plaintiffs would not carry a firearm without a ruling regarding arrest or prosecution, then plaintiffs' challenges to the other aspects of the policy are not justiciable because success on their claim would not lead to a change in their behavior.  That is, if plaintiffs do not intend to change their behavior even if they succeed in obtaining a declaration regarding police contacts other than an arrest, then plaintiffs could not meet the third requirement for standing, which is that the injury (in this case their inability to carry a firearm openly) will be redressed if they obtain a favorable decision. Lujan, 504 U.S. at 560-61.

I will give plaintiffs an opportunity to amend their complaint to clarify their intentions.  In particular, plaintiffs should include allegations addressing the circumstances under which they will carry a firearm.  If plaintiffs do not file an amended complaint within the deadline, I will dismiss the complaint in full for lack of jurisdiction.

 One final matter requires discussion.  Plaintiffs seek relief not only under the United States Constitution, but under the Wisconsin Constitution as well.  However, neither side

16

addresses whether plaintiffs may bring such a claim in federal court, in light of the sovereign immunity principles set forth in <u>Pennhurst State School & Hospital v. Halderman</u>, 465 U.S. 89 (1984), which prohibit a federal court from ordering state officials to comply with state law.  This limitation applies not just to injunctions, but to declaratory relief as well. <u>Benning v. Board of Regents of Regency Universities</u>, 928 F.2d 775, 778 (7th Cir. 1991).  Because these are the only forms of relief that plaintiffs seek in this case, it is not clear whether a federal court may exercise jurisdiction over the state law claims.  Accordingly, I am directing plaintiffs to show cause why their state law claim should not be dismissed, even if their second amended complaint shows that any of their claims under federal law are justiciable.

## ORDER

IT IS ORDERED that

1.  The motion to dismiss filed by defendants City of Madison and Noble Wray, dkt. #18, is GRANTED.

2.  Plaintiffs Wisconsin Carry, Inc., Brad Chapiewsky, Benjamin Moyes, Larry Herzog and William Veerhusen may have until April 19, 2011, to file an amended complaint that includes allegations regarding the circumstances under which they would carry a firearm, if any, even if they cannot obtain a pre-enforcement ruling regarding a potential arrest or prosecution.  If plaintiffs fail to respond to this order by April 19, 2011, the clerk of court

17

is directed to enter judgment in favor of defendants and close the case.

3.  If plaintiffs choose to file an amended complaint, it should be accompanied by a brief addressing the justiciability concerns raised in this order.  If plaintiffs include state law claims in their amended complaint, they should explain in their brief why sovereign immunity principles do not require dismissal of those claims.

4.  If plaintiffs file an amended complaint and brief by April 19, defendants may have until May 3, 2011, to file a response.   Plaintiffs may have until May 10, 2011, to file a reply.

Entered this 4th day of April, 2011.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

18