UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

WISCONSIN CARRY, INC.,
BENJAMIN MOYES,
LARRY HERZOG, and
WILLIAM J. VEERHUSEN,

       Plaintiffs,

   v.

CITY OF MADISON, WISCONSIN, and
NOBLE WRAY, in his official
capacity as Chief Of Police of
the City of Madison, Wisconsin,

       Defendants.

Case No.: 10-CV-548

## PLAINTIFFS' BRIEF ON JUSTICIABILITY

In its April 4, 2011 Opinion and Order ("Opinion and Order"), this Court granted Defendants' Motion to Dismiss. In the Opinion and Order, the Court stated that "Plaintiffs . . . may have until April 19, 2011, to file an amended complaint that includes allegations regarding the circumstances under which they would carry a firearm, if any, even if they cannot obtain a pre-enforcement ruling regarding a potential arrest or prosecution."[1] (Opinion and Order, p. 17). This Court went on to state that "[i]f plaintiffs choose to file an amended complaint, it should be accompanied by a brief addressing the justiciability concerns raised in this order."[2] (Opinion and

---

[1] The dates specified in the original Opinion and Order were modified by later Court Order. (*See* Joint Stipulation Regarding Extension of Dates for Filing Amended Complaint, Dkt. #25 (agreeing to set the date for filing the Amended Complaint and Brief on Justiciability for May 10, 2011); Order Accepting and Entering Joint Stipulation for Extension of Dates for Filing Amended Complaint, Dkt. #26).

[2] The Opinion and Order also directed that "If plaintiffs include state law claims in their amended complaint, they should explain in their brief why sovereign immunity principles do not require dismissal of those claims." (Opinion and Order, p. 18). Plaintiffs have dropped those claims from the Amended Complaint, and therefore these issues are

1

Order, p. 18). In accordance with that Order, Plaintiffs now submit this Brief on Justiciability, filed concurrently with their Amended Complaint, as requested by the Court.

## I. The Elements of Justiciability and Standing

"Article III of the U.S. Constitution limits the authority of the federal courts to 'cases or controversies.' From that requirement flow two closely related concepts: ripeness and standing." *Rock Energy Cooperative v. Village of Rockton*, 614 F.3d 745, 748 (7th Cir. 2010). With regard to standing, the Supreme Court has noted that the standing doctrine "requires federal courts to satisfy themselves that 'the plaintiff has "alleged such a personal stake in the outcome of the controversy" as to warrant *his* invocation of federal-court jurisdiction.'" *Summers v. Earth Island Institute*, ___ U.S. ___, 129 S.Ct. 1142, 1149 (2009) (quoting *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975) (emphasis in original)). "This requirement assures that 'there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party.'" *Summers*, 129 S.Ct. at 1149 (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 221 (1974).

The specific elements required to establish standing are well-settled. "In *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), we said that, to satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). As to the requirement of an "injury in fact," that "[i]njury need not be certain. Any pre-enforcement suit entails some element of chance: perhaps the plaintiff will

---

not addressed in this Brief on Justiciability.

desist before the law is applied, perhaps the law will be repealed, or perhaps the law won't be enforced as written. But pre-enforcement challenges nonetheless are within Article III." *Brandt v. Village of Winnetka*, 612 F.3d 647, 649 (7th Cir. 2010); *see also Hays v. City of Urbana, Illinois*, 104 F.3d 102, 103 (7th Cir. 1997) ("Long ago, the Supreme Court held that a person who must comply with a law or face sanctions has standing to challenge its application to him, even if the threat of prosecution is not immediate—indeed, even if the law is not yet in effect"). Further, "[s]tanding depends on the probability of harm, not its temporal proximity." *520 South Michigan Avenue Associates, Ltd. v. Devine*, 433 F.3d 961, 962 (7th Cir. 2006).

Unlike standing, there is no specific test for ripeness; however, there are numerous guidelines to help determine whether a case is ripe for adjudication. "Ripeness 'requir[es] us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Texas v. United States*, 523 U.S. 296, 300-01 (1998) (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967). "As a general matter, it is typically no bar to ripeness if the government has only threatened enforcement, rather than actually brought a lawsuit." *Wisconsin Central, Ltd. v. Shannon*, 539 F.3d 751, 760 (7th Cir. 2008); *see also 520 South Michigan Avenue Associates, Ltd.*, 433 F.3d at 963 ("Courts frequently engage in pre-enforcement review based on the potential cost that compliance (or bearing a penalty) creates"). As the U.S. Supreme Court put the matter, "where threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be enforced. The plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but does not eliminate Article III jurisdiction." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007) (emphasis in original); *see also id*. at 129 ("In

each of these cases, the plaintiff had eliminated the imminent threat of harm by simply not doing what he claimed the right to do (enter into a lease, or distribute handbills at the shopping center). That did not preclude subject-matter jurisdiction because the threat-eliminating behavior was effectively coerced"). Put differently, "[w]hen the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he 'should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.'" *Babbitt v. v. United Farm Workers National Union*, 442 U.S. 289, 298 (1979) (quoting *Doe v. Bolton*, 410 U.S. 179, 188 (1973)).

While these basic parameters for ripeness and standing have been established, these parameters do not draw a bright line in determining whether a particular party has standing or a case is ripe for judicial review. "This Court has acknowledged that the distinction between a 'controversy' in the Article III sense and an abstract question of law is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy." *Wisconsin Central, Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir. 2008) (quotations and citations omitted); *see also Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 297 (1979) ("The difference between an abstract question and a 'case or controversy' is one of degree, of course, and is not discernible by any precise test").

II.     **Application of the Court's Justiciability Concerns**

As this Court stated in the Opinion and Order, "the question presented by defendants' motion is not whether plaintiffs have identified a municipal policy, but whether that policy is sufficient to give plaintiffs standing to sue and creates a ripe dispute between the parties that is fit for judicial review." (Opinion and Order, p. 7). The Court went on to state that "plaintiffs

4

should include allegations [in an amended complaint] addressing the circumstances under which they will carry a firearm." (Opinion and Order, p. 16). Plaintiffs have filed a Second Amended Complaint concurrently with this Brief; the particular portions of the Second Amended Complaint that deal with the concerns the Court raised in the Opinion and Order are set forth below.

### A. Plaintiffs Have Standing to Bring Suit

As set forth above, the first requirement for Article III standing is that a plaintiff shows that he or she "has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc.*, 528 U.S. at 180-81. With regard to this first prong of the standing requirements, this Court stated in its Opinion and Order that "[b]ecause none of the plaintiffs allege that they have any intent to violate any of the laws listed in the policy, any claim by plaintiffs that they will be arrested or prosecuted for carrying a firearm is speculative."[3] (Opinion and Order, p. 11).

Plaintiffs have since revised the Complaint that was the subject of the Opinion and Order and Motion to Dismiss, and addressed this particular issue. As set forth in the Second Amended Complaint, Plaintiff Herzog is a frequent visitor to Madison, and would like to carry a firearm in Madison in places where it is legal to do so. (Second Amended Complaint, ¶ 27). Although he is fear of detention and search on account of Defendants' customs, policies, and practices, Mr. Herzog will carry a firearm on future visits to Madison, even if he is unable to obtain a pre-enforcement ruling regarding potential arrest or prosecution. (Second Amended Complaint, ¶¶ 27-28). Thus, at least one of the Plaintiffs is in a situation where he has an intent to violate the

---

[3] As noted in the Opinion and Order, "Plaintiffs are challenging not just possible arrest and prosecution, but any unwanted police contact, such as being questioned and having their firearm seized during the police encounter." (Opinion and Order, p. 12). These police contacts provide an additional basis for standing, as Defendants' customs, policies, and practices required these unwanted police contacts.

City's policy, Plaintiffs' claims of arrest or prosecution for carrying a firearm are more than speculative.

The second part of standing requires that "the injury is fairly traceable to the challenged action of the defendant." *Friends of the Earth, Inc.*, 528 U.S. at 180-81. There is no dispute that it is the policies of the Defendants in this case that have caused, and are continuing to cause the injury alleged in the Second Amended Complaint.

The final standing requirement requires that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc.*, 528 U.S. at 180-81. In the Opinion and Order, this Court noted two concerns. First, the Court noted that "[a] general statement that the plaintiffs [] 'would like' to carry a firearm openly may be insufficient because it leaves ambiguity regarding plaintiffs' intentions if they succeed in this lawsuit, particularly because none of the plaintiffs suggest that they carried a gun openly before the 2010 press release or continue to do so outside of Madison." (Opinion and Order, p. 15). The second concern was that "if plaintiffs do not intend to change their behavior even if they succeed in obtaining a declaration regarding police contacts other than an arrest, then plaintiffs could not meet the third requirement for standing." (Opinion and Order, p. 16).

Plaintiff Veerhusen has now stated in the Second Amended Complaint that he is a frequent visitor to Madison and would carry a firearm in Madison in the places where it is legal to do so, but he is in fear of detention and search for doing so on account of Defendants' customs, policies, and practices. (Second Amended Complaint, ¶ 29). Prior to the publication of Defendants' press release, Plaintiff Veerhusen carried a firearm in the City of Madison wherever it was legal to do so; he stopped doing so as a result of the publication of Defendants' press release. (Second Amended Complaint, ¶ 30). If Plaintiff Veerhusen were to prevail in this

litigation, he would resume carrying a firearm in the City of Madison wherever it is legal to do so. (Second Amended Complaint, ¶ 31).

### B. Plaintiffs' Case is Ripe

As the Court noted in its Opinion and Order, "Plaintiffs are challenging not just possible arrest and prosecution, but any unwanted police contact, such as being questioned and having their firearm seized during the police encounter." (Opinion and Order, p. 12). As the Court went on to note, "because the policy encourages citizens to call the police any time they see someone with a firearm and the policy seems to require officers to have the contacts whenever they receive notification, there is at least a 'reasonable probability' of a police interaction in the event any of the plaintiffs would choose to carry a firearm openly." (Opinion and Order, p. 13).

As set forth in the Second Amended Complaint and Section II.A., *supra*, Plaintiff Herzog has noted his intention to carry a firearm openly in the City of Madison. (Second Amended Complaint, ¶ 28). To the extent that the Court was concerned about whether or not any of the Plaintiffs would carry openly in the City of Madison, and thus suffer a reasonable probability of suffering the injuries alleged in the Second Amended Complaint, this allegation should assuage such concern, and show that Plaintiffs' claims are ripe for adjudication.

**III.     Conclusion**

For the reasons set forth above, Plaintiffs meet the requirements of justiciability with regard to the allegations set forth in the Second Amended Complaint, and this case should be allowed to proceed.

Respectfully submitted this 10th day of May, 2011

| TROUPIS LAW OFFICE LLC | LAW OFFICES OF JOHN R. MONROE |
|---|---|
| By: /s/ Sarah E. Troupis . | |
| James R. Troupis (SBN #1005341) | John R. Monroe |
| Sarah E. Troupis (SBN #1061515) | Attorney at Law |
| Troupis Law Office LLC | 9640 Coleman Road |
| 7609 Elmwood Avenue, Suite 102 | Roswell, Georgia 30075 |
| Middleton, Wisconsin 53562 | Phone: (678) 362-7650 |
| Phone: (608) 807-4096 | Fax: (770) 552-9318 |
| Email: jrtroupis@troupislawoffice.com | Email: john.monroe1@earlthlink.net |
| *Attorneys for all Plaintiffs* | *Attorneys for all Plaintiffs* |